# In the United States Court of Federal Claims

No. 19-388C
(Filed: March 29, 2019)
NOT FOR PUBLICATION

* * * * * * * * * * * * * * * * * * * * * * *

ACTIONET, INC.,

    *Plaintiff*,

v.

THE UNITED STATES,

    *Defendant*,

and

ACCENTURE FEDERAL SERVICES LLC,

    *Intervenor*.

* * * * * * * * * * * * * * * * * * * * * * *

Post-award bid protest; Preliminary injunction; Temporary restraining order; Irreparable harm.

## ORDER

    Plaintiff in this post-award bid protest filed its complaint on March 13, 2019, along with a motion for a temporary restraining order ("TRO") and a preliminary injunction. Accenture Federal Services, the awardee, intervened the next day, and a status conference with all three parties was held on March 14, 2019, during which was discussed the need for preliminary injunctive relief. Two initial task orders had been issued to Accenture, but defendant represented during the status conference that, as of that date, the agency had no imminent plans to award further task orders prior to April 12, 2019, which was the date on which plaintiff's incumbent contract was to expire. Based on those facts, plaintiff concluded that it

would continue to seek a preliminary injunction.[1]

A schedule was entered for briefing on the request for a preliminary injunction, which was to conclude with argument on that motion set for April 11, 2019.  On March 19, 2019, the government filed a notice of the agency's intent to issue six additional task orders under the protested contract on March 21, 2019, along with a declaration from the Chief Information Office of the Department of Energy as to the necessity of the to-be-ordered services.

On March 22, 2019, plaintiff filed the subject motion, requesting that the court issue a TRO to preserve the status quo until the preliminary injunction hearing on April 11, 2019.[2]  We then directed defendant to file a combined response to plaintiff's two motions on or before March 28, 2019.  Intervenor filed its response to the preliminary injunction as previously scheduled on March 27.

The court must consider four factors when entertaining a request for temporary injunctive relief: (1) plaintiff's likelihood of success on the merits; (2) whether plaintiff will suffer irreparable harm without the relief sought; (3) the balance of the harms between the parties; and (4) the public's interest in an injunction (or not).  *Bona Fide Conglomerate, Inc. v. United States*, 96 Fed. Cl. 233, 239 (2010).  No single factor is dispositive, *FMC Corp. v. United States*, 3 F.3d 424, 427 (Fed. Cir. 1993), but this court is generally reticent to enjoin agency procurement action, even briefly, without a showing that the protestor is likely to succeed on the underlying merits of its protest, *e.g.*, *Intelligent Waves, LLC v. United States*, 135 Fed. Cl. 299, 314 (2017).  We need not reach the merits issue on this motion, however, because we are satisfied that the balance of the three other factors does not support the issuance of a temporary injunction pending oral

---

[1] The court also stated during the status conference that it was unlikely to grant a request for interim relief prior to the preliminary injunction due to a lack of harm but cautioned that new task orders could change that analysis.

[2] We note that this court's rules make clear that a TRO is issued only when there is not time to notice and hear from the opposing party.  Here, since defendant has responded to the motion, it is properly considered a preliminary injunction, but we use the TRO nomenclature as that is how plaintiff delineated its motion and to distinguish between the two motions.

argument on the preliminary injunction motion.

Plaintiff submitted the declaration of its Executive Vice President and Chief Operating Officer, Michael Genebach, in support of its motion for a TRO. He alleges the following harms to be suffered by ActioNet before April 11: 1) monetary loss of the value of whatever work is performed under the new contract prior to the preliminary injunction hearing; 2) potential further loss of employees who are being recruited by Accenture and its partners for the new work; 3) additional performance by Accenture will make it harder for DOE to unwind or transition to a new awardee should the court sustain the ultimate merits of the protest, meaning that plaintiff's argument for a permanent injunction under the balance of harms factor will be weakened without an injunction now.

Defendant submitted two declarations of Max Everett, the Chief Information Officer for the Department of Energy ("DOE"). The first, attached to the government's notice of pending task order awards to Accenture, declares that DOE's current IT systems are near or at "end-of-life status" and that the work under the new contract is necessary to move to new systems and to enhance the agency's cyber-security. To that end, the six anticipated task orders are necessary, according to Mr. Everett, to begin any work under the new contract, including the two orders already placed and anticipated by the solicitation. Without them, "[n]o new modernization projects will be able to move forward." Decl. of Max Everett ¶ 11 (Mar. 19, 2019) (ECF No. 23-1). The declaration further represents that additional unnecessary costs supporting legacy systems will be incurred should work not commence on the new contract. Mr. Everett also declares that plaintiff was given the opportunity to submit a proposal for this work when the funds became available in 2018 but was unable to respond timely or appropriately to that request. Thus the work was put off until the new contract could be solicited and awarded; the implication being that this work has been delayed too long already. Lastly, the declaration states that cybersecurity for DOE writ large will be impacted by any inability to onboard the new cybersecurity contractors under the new contract.

Mr. Everett's second declaration was submitted by the government in support of its response to plaintiff's two motions. This declaration quantifies the harm to the agency should any preliminary injunctive relief be ordered by the court. Mr. Everett clarifies that one of the six anticipated

task orders was issued on March 22, 2019, and the that other five "are in the final stage of preparation and award." Second Decl. of Max Everett ¶ 4 (Mar. 28, 2019) (ECF No. 39-1). The fifth paragraph quantifies the agency's expenditure per month on the first three task orders awarded: $822,524, $292,745, and $819,613 respectively. Thus, Mr. Everett concludes that a bond of $1,934,882 would be necessary to compensate the government for the loss of the value of this work should performance be enjoined temporarily or preliminarily. In addition, $15,271,096 in additional bond funds is sought for the risk of losing funding from the Technology Modernization Fund, although that loss is not assured.

The competing declarations and briefing also present a dispute as to whether plaintiff or the agency has prevented ActioNet from backfilling positions as it loses employees in anticipation of the expiration of its incumbent contract. Mr. Everett states in his first declaration that this lack of backfill endangers ActioNet's ability to perform the work that the agency needs, especially as it concerns DOE's cybersecurity needs. Mr. Genebach, in his declaration, represents that ActioNet has never refused to backfill any position, has sought to fill any openings, but that DOE has asked plaintiff not to backfill certain positions, and that, during the protest at the Government Accountability Office, asked that plaintiff not fill open positions. It is thus, in plaintiff's view, that any danger the agency sees in this regard is of its own making. We are unable to resolve this dispute in the context of the present motion, but ultimately it does not matter to our conclusion.

We are thus left with competing declarations of harm. In resolving this conflict, we are mindful of the procedural context in which the court finds itself. We cannot ignore the fact that a hearing on a preliminary injunction will be heard in less than two weeks. Any harm is therefore, of necessity, limited to a very brief window of time.

Plaintiff presents a monetary harm of the loss of work to be performed in the interim by Accenture and the potential loss of its personnel who move to Accenture to perform that work. DOE has, in fact, quantified the value of what it believes is likely to be performed in the interim, one month of work under three task orders valued at a combined amount of $1.9 million. The three task orders valued are the initial two orders contemplated

in the solicitation and the task order awarded on March 22.[3] We note that this amount accounts for the value to the agency that might be lost as a result of a TRO and a preliminary injunction. We can thus assume that the value is less for the TRO alone, which is all we consider here.

We find that the monetary loss to Accenture is insufficient to support a temporary injunction. It is some subset of $1.9 million, and a further subset of that would represent profit to plaintiff. Although the loss of a contract's total value is often found to be sufficient harm to support a permanent injunction in this court, at the preliminary or temporary injunction stage, the calculus is different. In the context of the ultimate merits of a protest, what is at risk is the whole value of the contract. Not so at this stage. Even assuming $1.9 million as a true potential loss to plaintiff, and assuming that it could not recoup any of those funds were the award to Accenture ultimately reversed, that figure is a small fraction of the total anticipated $2 billion value of this new contract.[4] We thus find the danger to plaintiff of this loss not to be irreparable.

We similarly do not find the potential for further employee attrition to be irreparable at this stage. Although we take at face value the representation that intervenor is soliciting plaintiff's employees to join its new contract team, noticeably absent is an allegation that this state is irreversible. Presumably they could be hired back. Without such, we find this to be insufficient to support an injunction because the harm is not irreparable.

Lastly, the further entrenchment of Accenture's personnel into DOE's information technology workforce and daily operations is, as defendant argues, insufficient to show irreparable harm. That allegation is

---

[3] It is unclear from defendant's papers why the other anticipated task orders are not valued or included in the bond ask, but we presume that the agency would have asked for a higher bond amount if it thought it likely for additional amounts to be expended during the pendency of this protest.

[4] Further, plaintiff's existing contract's period of performance runs through April 12, 2019, which further ameliorates any loss potentially suffered prior to that date. The parties' dispute regarding funding/reimbursement for the two-month extension of plaintiff's incumbent contract beyond April 12 is immaterial.

purely speculative and anticipates defendant's arguments at the permanent injunction stage. We are neither as clairvoyant nor as concerned by that possibility. Defendant bears the risk that it will make transition to a different awardee more painful due to the award of new task orders under a protested contract should the underlying award ultimately be enjoined.

      In sum, plaintiff has not shown irreparable harm if the court does not enter a temporary injunction pending the preliminary injunction hearing on April 11, 2019. The balance of harms does not weigh in plaintiff's favor, and the public's interest is not yet implicated. Plaintiff's motion for entry of a temporary restraining order is denied.

<u>s/Eric G. Bruggink</u>  
Eric G. Bruggink  
Senior Judge
